# Exhibit 1



# U.S. Department of Justice

**United States Attorney**
*District of Idaho*

---

| | |
|---|---|
| **Mailing Address:** | Tel: 208/334-1211 |
| | FLU Fax: 208/334-9375 |
| 1290 W. Myrtle St. Suite 500 | Civ Div Fax: 208/334-1414 |
| Boise, ID 83702 | Crim Div Fax: 208/334-1413 |
| | DTF Div Fax: 208/334-1413 |

September 23, 2020

Brain Donesley
802 W Bannock, Suite L106
Boise, ID 83702

    Re:    Non-Prosecution Agreement – Aaron Campos

Dear Mr. Donesley:

    On the understandings specified below, the United States Attorney's Office for the District of Idaho ("this Office") will not bring any criminal action against Aaron Campos for any crimes related to offenses involving violations of 7 U.S.C. § 2024(b), Federal Program Theft, and 18 U.S.C. § 1343, Wire Fraud, for such offenses occurring between January 1, 2013 and August 10, 2016 ("Applicable Time Period") committed by Aaron Campos. This Non-Prosecution Agreement ("Agreement") applies only to conduct that occurred during the Applicable Time Period. This Agreement does not provide any protection against prosecution for any crimes except as set forth above, and applies only to Aaron Campos, your client.

    It is understood that Aaron Campos accepts and acknowledges responsibility for the facts as set forth in Exhibit A, which is incorporated herein by reference. It is further understood that Aaron Campos will not contradict the facts in Exhibit A. It is further understood that this agreement does not preclude any administrative actions taken on behalf of the United States. This includes, but is not limited to, potential adverse actions from the Food and Drug Administration regarding Mr. Campos and his business entities.

    Consideration for this Agreement is the nonprosecution of Mr. Campos and his agreement to pay a total sum of $600,000 to the United States, or its designee and that his entity Campos Market #2, LLC will be liable to the same extent as he is and is obligated and agrees to the same terms as Mr. Campos herein. Mr. Campos stipulates that the sum of $600,000 is proceeds derived from the offenses listed above. Aaron Campos, upon execution of this Agreement, shall pay $200,000 immediately to the United States. Mr. Campos shall then pay $10,000 on the first day of every month after the execution of this Agreement for forty (40) months until the full sum of $600,000 is paid in full, and payments will commence on November 1, 2020. Mr. Campos shall make payments payable to the U.S. Department of Justice and send them to the U.S. Attorney's Office for the District of Idaho at 1290 W. Myrtle St., Suite 500, Boise, Idaho 83702, or as otherwise designated by the Office. Mr. Campos agrees that if he is delinquent in payments (which means he does not make a payment by the first of each month), or

otherwise fails to honor the terms of this Agreement, the United States may enforce and collect the debt to the fullest extent allowed by law and Mr. Campos agrees he will forfeit the property located at 4714 E. Cleveland Blvd, Caldwell, Idaho (a property further described in Attachment A). Mr. Campos stipulates that this property was purchased with proceeds from the offenses listed above. Failure to make a payment required herein on time as described above or failure to abide by other terms of this Agreement constitutes "default." Even if Mr. Campos is not in default and the full $600,000 has not been paid, the United States may immediately, or at another time, file liens against any property of Mr. Campos, including but not limited to the 4714 E. Cleveland Blvd., Caldwell, Idaho property. Mr. Campos also agrees that the United States may place him on the Treasury Offset Program so that any payment from the federal government may be captured and offset against the debt set forth herein.

Mr. Campos acknowledges that the Office will file a civil complaint in the U.S. District Court for the District of Idaho against him and Campos Market #2, LLC seeking a civil judgment for the $600,000.00 agreed to be paid herein, and Mr. Campos on his own behalf and on behalf of Campos Market #2, LLC agree to the entry of a civil judgment. To facilitate a civil judgment in favor of the United States, Mr. Campos agrees to sign a stipulated motion for a civil consent judgment. The consent judgment will provide that judgment is granted to the United States for $600,000 against Mr. Campos and Campos Market #2, LLC. Mr. Campos agrees to approve such a civil consent judgment. Through the civil consent judgment, the United States may obtain liens on Mr. Campos's property to secure the payment of the $600,000.00. Once the entire $600,000.00 is paid by Mr. Campos, the Office will release its liens. Mr. Campos agrees to waive service of a summons in the civil case.

It is understood that, should Mr. Campos violate any provision of this Agreement, or otherwise breach this Agreement, he may be prosecuted without reservation or limitation. Furthermore, any such prosecution will not be time-barred by any applicable statute of limitations. By this Agreement, Mr. Campos knowingly waives all defenses or objections related to timeliness of prosecution, delay, statute of limitations, or similar theories.

It is further understood that this Agreement does not bind any other federal, state, or local prosecuting authority other than this Office. This Office does not represent the Internal Revenue Service. This office does not, and cannot, bind the Internal Revenue Service. This Agreement does not preclude or prevent any actions of any other federal or state agencies or entities, including but not limited to the Food and Drug Administration, in that they may suspend any benefits, among other penalties.

With respect to this matter, from the date of the signing of this Agreement forward, the Agreement supersedes all prior, if any, understandings, promises, agreements, and/or conditions between this Office and Aaron Campos. No additional promises, agreements, and conditions have been entered into other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.

Sincerely,

Bart M. Davis
United States Attorney
by

David G. Robins
Assistant United States Attorney

AGREED AND CONSENTED TO:

_____        10-15-2020
Aaron Campos                            Date

APPROVED:

_____        10-19-2020
Brian Donesley                          Date
Attorney for Aaron Campos


NOTARY

I, Aaron Campos, attest and affirm that I have read the entirety of this Non-Prosecution Agreement. I agree and acknowledge the facts contained in this Non-Prosecution Agreement, Exhibit A, and ATTACHMENT A, are all true and accurate to the best of my knowledge. I agree and consent to all the terms of this Non-Prosecution Agreement dated 9/23/20. I have thoroughly read and understand every provision of this Non-Prosecution Agreement, Exhibit A, and ATTACHMENT A. I have had adequate and ample time to address the entirety of this Non-Proseucution Agreement, Exhibit A, and ATTACHMENT A with my attorney. My attorney has answered every question I have had for him, and I sign this freely. Mr. Brian Donesley is my attorney, and I am completely satisfied with his services. I sign this being of sound mind and judgment. I sign this free of duress and coercion. I sign this voluntarily with the advice of my lawyer.

_____        10/15/20
Aaron Campos                            Date


State of        Idaho
County of       Ada

This instrument was signed or acknowledged before me on October 15-2020
by Aaron Campos

_____
Notary Signature

My commission expires 12-5-22

[Notary Seal: ANDREA WALDEN, NOTARY PUBLIC, Comm. No. 68969, STATE OF IDAHO]

EXHIBIT A

*AC* In support of the Non-Prosecution Agreement dated 9/23/2020, the United States Attorney's Office for the District of Idaho and Aaron Campos agree to the following factual statements.

*AC* The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, is a welfare program funded by the United States Department of Agriculture, and, in Idaho, administered by the Idaho Department of Health and Welfare.

*AC* The SNAP program was created by statute and administered by regulation, and was designed to provide economically disadvantaged persons, meeting specified eligibility criteria, with the funds to purchase essential food products for themselves and their families. Recipients of SNAP benefits could use those benefits solely for the purchase of eligible food items, and the transfer of SNAP benefits for cash is strictly prohibited.

*AC* Recipients of SNAP benefits could use those benefits only at retail food stores which were formally authorized to participate in the SNAP program ("SNAP stores"). To become a SNAP store in Idaho, a store owner was required to complete, sign, and submit a SNAP Application for Stores (FNS Form 252) to the USDA Food and Nutrition Services Division ("FNS") showing that the store met eligibility requirements and containing an acknowledgment by the store owner that it was unlawful to trade cash for food stamp benefits.

*AC* The FNS Form 252 also contained an express promise that the applicant store owner would prevent violations of the SNAP rules and regulations such as trading cash for food stamp benefits. The SNAP benefits recipients received Electronic Benefits Transfer cards, in Idaho referred to as an Idaho Quest Card, which is used in card scanners at SNAP stores.

*AC* The Idaho Department of Health and Welfare authorized a specific monthly dollar amount of SNAP benefits to eligible recipients which could be accessed only with their Quest cards and Personal Identifying Numbers ("PINs"). When authorized to participate in the SNAP program, retail food stores received the ability to process SNAP benefits through electronic means at "point of sale" terminals.

*AC* The purchase of eligible food items using SNAP benefits was accomplished in the following manner: 1) the recipient would select authorized food items at an SNAP store and present the item for purchase; 2) the point of sale ("POS") terminal would then read the recipient's Quest card; 3) the recipient would then enter their PIN into the POS terminal; 4) the POS terminal would communicate electronically with a central database located outside of the State of Idaho by electronic transmission to determine whether sufficient benefits were available for the purchase; 4) the central database computer would then send the POS terminal, by wire, information that the purchase was authorized or denied based on the amount of benefits available; 5) if authorized, the central database computer would then send the POS terminal, by wire, information that the purchase was authorized or denied based on the amount of benefits available; 6) if authorized, the central database would deduct the purchase price from the balance on the recipient's account and add a corresponding amount to the SNAP store's account; and 7)

EXHIBIT A - 1

*A.C.* the central database would calculate the cumulative SNAP benefit sales for each SNAP store on a daily basis and initiate electronic wire transfers of Department of Agriculture funds to the SNAP participating store's designated bank account to pay the SNAP store for the SNAP purchases made that day.

*A.C.* Campos Market was a retail food, liquor, and convenience store located at 413 North Orchard Street, Boise, Idaho, and owned by Aaron Campos. Campos Market became an authorized participant in SNAP, based on the submission of an FNS 252 form signed by the Mr. Campos on March 23, 2013, and continued as an authorized participant throughout the period detailed in Count One of this Information.

*A.C.* On or about the dates of January 1, 2013 to August 10, 2016, Mr. Campos did knowingly and willfully permit the sale of ineligible items under the SNAP. Mr. Campos also knowingly and willfully permitted the exchange of cash for SNAP benefits. This occurred in the District of Idaho, and Aaron Campos used proceeds from the crime to purchase 4714 E. Cleveland Blvd, Caldwell, Idaho, a property he owns. In sum, Mr. Campos received $600,000 in proceeds from knowing and fraudulent misuse of the SNAP.

*A.C.* Mr. Campos acknowledges that his actions to sell ineligible items under SNAP and to exchange cash for SNAP benefits allowed him to inappropriately and fraudulently obtain the $600,000 just mentioned. The actions and means Mr. Campos used to obtain this money constitute actual fraud because his conduct was deceptive; he made misrepresentations (including in Form 252 that he would not engage in the conduct that he engaged in); he intended to deceive the SNAP; the SNAP and those administering it relied on Mr. Campos's conduct and representations; and Mr. Campos's deceptive conduct caused $600,000 damage to the SNAP.

I, Aaron Campos, attest and affirm that " *A.C.* " are my initials, and that I have read the entirety of this Exhibit A. My initials next to every paragraph indicate my agreement and acknowledgement of the facts contained therein. This Exhibit A is part of the Non-Prosecution Agreement I am executing with the United States. I sign this being of sound mind and judgment. I sign this free of duress and coercion. I sign this voluntarily with the advice of my lawyer.

_____    10-29-2020
Aaron Campos                 Date

State of __Idaho__

County of __Ada__

This instrument was signed or acknowledged before me on __October 29, 2020__

by __Sue Archer__

_Sue Archer_
Notary Signature

SUE ARCHER
COMMISSION #16110
NOTARY PUBLIC
STATE OF IDAHO

EXHIBIT A - 2